UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WESLEY T. FULLARD,

        Plaintiff,

v.                                                     Case No. 3:22-cv-672-MMH-PDB

A. ROBINSON, et al.,

        Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Wesley T. Fullard, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on June 10, 2022,[1] by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[2] with exhibits (Docs. 1-1 through 1-10). In the Complaint, Fullard presents claims pursuant to 42 U.S.C. § 1983 against the following Defendants: Captain Jesus Camacho, Jr. (Camacho); Nurse Practitioner A. Robinson (Robinson); and Nurse M. Rossinsheld[3] (Rossinsheld). See Complaint at 2-3. Fullard asserts Defendants'

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] Defendant Rossinsheld's name is spelled differently throughout the record. See, e.g., Complaint at 2 ("M. Rossihsheld"); Doc. 22 at 1 ("M. Rossinsheld"). The

actions in response to his COVID-19 medical emergency violated his Eighth and Fourteenth Amendment rights. Id. at 3, 23-24. As relief, Fullard seeks monetary damages, as well as declaratory and injunctive relief. Id. at 25-26.

This matter is before the Court on the following Motions: (1) Defendants Robinson and Rossinsheld's Motion to Dismiss Plaintiff's Complaint (Nurses' Motion; Doc. 22); and (2) Defendant Camacho's Motion to Dismiss Complaint with Prejudice (Camacho Motion; Doc. 23) with exhibits (Docs. 23-1 through 23-2) (collectively "Motions"). Fullard filed responses in opposition to both Motions. See Camacho Response (Doc. 26); Nurses' Response (Doc. 27). Thus, Defendants' Motions are ripe for review.

## II. Fullard's Allegations[4]

In his Complaint, Fullard asserts Defendants violated his Eighth Amendment rights when: (1) Defendants Robinson and Rossinsheld failed to treat his serious medical needs, leading him to sustain permanent damage to his heart and lungs; (2) Defendants acted with deliberate indifference; (3) the medical treatment he received was so "grossly incompetent, inadequate, or

---

Court utilizes the spelling set forth in Defendants Robinson and Rossinsheld's Motion to Dismiss. See Doc. 22.

[4] In considering the Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Fullard, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

excessive as to shock the conscience"; (4) Defendants ignored his medical history and refused to "moniter [sic], supervise or protect [him] from his deleterious serious medical needs"; and (5) Defendant Camacho "disrupted, intervened and hindered" his medical treatment by providing false medical information to his family. See Complaint at 23-24. Fullard also asserts a Fourteenth Amendment claim against Defendant Robinson for refusing to release him "from isolation/confinement . . . because he is of a different color/race." Id. at 24.

As to the specific underlying facts supporting his claims, Fullard alleges that he declared a medical emergency on July 21, 2020, because he was experiencing COVID-19 symptoms.[5] Id. at 13-14. At the time, Fullard was incarcerated at Columbia Correctional Institution (Columbia CI). Id. at 4, 6. Defendant Camacho escorted Fullard from his dormitory to Columbia CI's medical annex. Id. at 14-15. Fullard alleges Defendant Camacho berated him for asking his mother to call Columbia CI and alert prison officials to Fullard's condition. Id. at 14. Defendant Camacho also allegedly threatened Fullard with excessive force if he was lying about being sick. Id. at 14-15. At medical,

---

[5] According to the medical records Fullard submitted with his Complaint, Fullard was administered a COVID-19 test on July 16, 2020, approximately five days before he declared this medical emergency. See Doc. 1-3. Fullard's positive test results were not reported until July 22, 2020, the day after he declared the medical emergency. Id.

Defendant Rossinsheld took Fullard's vital signs and completed a form entitled "Respiratory/Shortness of Breath Protocol." Id. at 15; see also Doc. 1-4. Fullard asserts Defendant Rossinsheld "yell[ed] and scream[ed] at [him] in her questioning" after she observed Defendant Camacho yelling and pacing in the hallway outside the examination room. Complaint at 15. Fullard alleges Defendant Robinson, the acting nurse practitioner on duty, was sitting in an office directly across from Fullard during his evaluation, but refused to get involved despite knowing Fullard was a high-risk patient due to his past medical history. See Fullard Affidavit at 4 (Fullard Aff.; Doc. 1-1). Defendant Robinson allegedly told Fullard he did not have COVID-19. Id. Because he did not have a fever, Fullard alleges Defendant Rossinsheld sent him back to his dormitory without providing any treatment or medication for COVID-19. Id.; see also Complaint at 16. According to Fullard, Defendant Camacho called Fullard's mother after the evaluation and informed her that Fullard did not have COVID-19 and did not require outside medical treatment. See Complaint at 17.

According to Fullard, his condition continued to decline, and he therefore declared a second medical emergency on July 25, 2020. Id. This time, Defendant Rossinsheld came to Fullard's dormitory to escort him to medical. Id. at 17-18. Dr. Perez evaluated Fullard and determined that Fullard needed to be transported to a hospital for further evaluation and treatment. Id. at 18;

4

see also Docs. 1-5 through 1-7. Fullard was admitted to the hospital on July 26, 2020, for acute hypoxic respiratory failure due to COVID-19. See Doc. 1-8 at 1. He was discharged from the hospital on August 2, 2020. Id. Fullard was then placed in Columbia CI's infirmary. See Doc. 1-9. He was discharged from the infirmary on August 6, 2020, with his discharge note stating that he could be housed in "open population." Id.; see also Doc. 1-10 at 1; Complaint at 20.

Instead of returning to open population, Fullard alleges he was transferred to "confinement/isolation" (isolation) at Columbia CI on August 7, 2020. See Complaint at 19-21. Fullard questioned this placement, and prison officials told Fullard he was in isolation due to "being exposed to COVID at the hospital." Id. at 19. According to Fullard, the temperature in isolation reached over one hundred degrees due to a lack of controlled air. Id. at 21. After spending fourteen days in isolation, Fullard alleges he attempted multiple times to be transferred to open population. Id. His efforts included asking a medication nurse to contact Defendant Robinson about his release from isolation. Id. The nurse told Fullard she spoke with Defendant Robinson, but Defendant Robinson allegedly failed to take action. Id. Fullard then filed a grievance and prison officials responded stating that his release from isolation was under review. Id. at 21-22. Fullard also placed notes in his cell door window, which ultimately led to his release after Columbia CI's warden spotted

the notes during an inspection. <u>Id.</u> at 22. Fullard alleges he spent twenty-nine days in isolation before he was released to open population. <u>Id.</u>

### III. Summary of the Arguments

In their Motion, Defendants Robinson and Rossinsheld argue the Court should dismiss Fullard's claims against them with prejudice because: (1) Fullard failed to exhaust his administrative remedies; (2) Fullard fails to state an Eighth Amendment claim upon which relief can be granted; and (3) Fullard failed to comply with the requirements of Florida Statutes Chapters 766 and 768.38. <u>See</u> Nurses' Motion at 4-17. In response to the Nurses' Motion, Fullard argues the Court should not dismiss his claims because: (1) he states plausible Eighth Amendment claims for relief; (2) he exhausted his administrative remedies; and (3) Florida Statutes Chapters 768.38 and 766 do not apply to his claims. <u>See</u> Nurses' Response at 6-40.

Defendant Camacho argues in his Motion that the Court should dismiss Fullard's claims against him with prejudice for the following reasons: (1) Fullard failed to exhaust his administrative remedies; (2) Fullard fails to state Eighth or Fourteenth Amendment claims upon which relief can be granted; (3) Defendant Camacho is entitled to Eleventh Amendment immunity and qualified immunity; and (4) Fullard is not entitled to the relief he requests. <u>See</u> Camacho Motion at 4-29. In response, Fullard argues his claims are not subject to dismissal because: (1) he exhausted his available administrative remedies;

(2) he states plausible claims for relief; (3) he is entitled to declaratory and injunctive relief; and (4) Defendant Camacho is not entitled to qualified immunity. <u>See</u> Camacho Response at 6-36.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[6] (noting that exhaustion is a "threshold matter" that must be addressed first) (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). A prisoner such as Fullard, however, is not required to plead exhaustion. <u>See</u> <u>Jones v.</u>

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[7] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies

---

[7] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In <u>Ross</u>, the Supreme Court identified three circumstances in which an administrative remedy would be considered "not available." <u>Ross</u>, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>Id.</u> Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." <u>Id.</u> Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 644.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Fullard] has failed to exhaust his available administrative remedies." <u>Turner</u>, 541 F.3d at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to

> dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082-83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in <u>Turner</u>, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. <u>Bryant</u>, 530 F.3d at 1376; <u>see also</u> <u>Jenkins v. Sloan</u>, 826 F. App'x 833, 838-39 (11th Cir. 2020).

Here, Defendant Camacho provided declarations and Fullard's grievance records with his Motion. <u>See</u> Docs. 23-1 through 23-2. And Fullard submitted his own affidavit as well as medical and grievance records with the Complaint. <u>See</u> Docs. 1-1 through 1-10. Fullard's responses in opposition to the Motions also include additional medical records as well as copies of documents previously submitted by the parties. <u>See, e.g.</u>, Camacho Response at 9-10, 12-13 (attaching copies of declarations and grievance records previously

submitted by Defendant Camacho with his motion to dismiss); Nurses'
Response at 8, 10-14, 21-26, 33-37 (medical records). The parties neither
dispute the accuracy of this record evidence, nor request an evidentiary
hearing. Bryant, 530 F.3d at 1377 n.16. Thus, the Court considers the record
evidence solely for purposes of addressing the parties' competing contentions
regarding exhaustion. In evaluating whether Fullard has satisfied the
exhaustion requirement, the Court notes that the Eleventh Circuit has
determined that a "prisoner need not name any particular defendant in a
grievance in order to properly exhaust his claim." Parzyck v. Prison Health
Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v.
Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218
(stating that "it is the prison's requirements, and not the PLRA, that define
the boundaries of proper exhaustion"). The FDOC provides an internal
grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001
through 33-103.018. Generally, to properly exhaust administrative remedies,
a prisoner must complete a three-step sequential process. First, an inmate
must submit an informal grievance at the institutional level to a designated
staff member responsible for the specific problem. See Fla. Admin. Code R. 33-
103.005. If the issue is not resolved, the inmate must submit a formal grievance

at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or

grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. Fullard's Exhaustion Efforts

Defendants maintain that Fullard failed to exhaust his administrative remedies before he filed this lawsuit. See Nurses' Motion at 9-12; Camacho Motion at 4-10. Defendants Robinson and Rossinsheld specifically argue that Fullard failed to timely file an informal grievance, which resulted in him filing an untimely formal grievance and grievance appeal. See Nurses' Motion at 11-12. In his Motion, Defendant Camacho notes Fullard received no approved informal or formal grievances related to the claims at issue in this lawsuit. See

Camacho Motion at 10. Defendant Camacho further argues that Fullard failed to perfect a grievance appeal in accordance with FDOC grievance protocol. Id. In support of these contentions, Defendant Camacho submitted the Declaration of FDOC Secretary Specialist Catherine Tuten (Tuten Decl.), see Doc. 23-1 at 1, and the Declaration of FDOC Operation Analyst Lawanda Sanders-Williams (Sanders-Williams Decl.), see Doc. 23-2 at 1. Tuten states in relevant part that:

> 2. At the request of the Florida Office of the Attorney General, I have reviewed the available grievance records stored in the FDC's Central database and that of Jefferson Correctional Institution for inmate Wesley T. Fullard, Sr., DC# J489333,[8] for grievances filed between July 21, 2020 and June 10, 2022.
>
> 3. During that period, inmate Wesley T. Fullard, Sr., DC# J489333, had no approved informal or formal grievances regarding threatening language used against him, claims of deliberate medical indifference, or any mention of a false statement made against his interests.

Tuten Decl. at 1. Likewise, based on her review of grievance appeals records, Sanders-Williams states that Fullard "received no approved or denied appeals regarding threatening language used against him, claims of deliberate medical

---

[8] Both Declarations contain a scrivener's error regarding Fullard's inmate number (DC#). According to the remaining record evidence and FDOC's offender information search website, Fullard's inmate number is J48933, not J489333. See https://fdc.myflorida.com/OffenderSearch/Search.aspx. The FDOC website does not show any inmates with the number J489333.

indifference, or any mention of a false statement made against his interests"
between July 21, 2020 (when Fullard declared his first COVID-19 medical
emergency) and June 10, 2022 (when Fullard filed this lawsuit). <u>See</u> Sanders-
Williams Decl. at 1.

In addition to the Declarations, Defendant Camacho submitted search
results from FDOC's Inmate Grievance database for all grievances submitted
by "Inmate Number" "j48933" between July 21, 2020, and June 10, 2022. <u>See</u>
Doc. 23-1 at 2-5; Doc. 23-2 at 2-3. FDOC's Inmate Grievance database shows
that Fullard submitted six informal grievances between July 21, 2020, and the
end of 2020. <u>See</u> Doc. 23-1 at 2-3. His first informal grievance, received
September 1, 2020, was returned. <u>Id.</u> at 2 (informal grievance for "31A –
Transfers"). A copy of this grievance is not in the record, but based on Fullard's
allegations in the Complaint, this appears to be the grievance Fullard
submitted while in isolation. <u>See</u> Complaint at 21-22 ("Fullard does 14 days in
confinement . . . . Fullard cannot get anyone to assist him in getting out of
confinement/isolation. Fullard asks the medication nurse if she would contact
[Defendant] APRN Robinson at the annex to release Fullard. The medication
nurse tells Fullard that she spoke with [Defendant] APRN Robinson about
Fullard's release from confinement/isolation. Fullard is still not released and
writes a grievance on the matter. Fullard is told that his release from
confinement/isolation is being reviewed.").

15

Fullard's second informal grievance, submitted September 23, 2020, also concerns the claims at issue in this lawsuit. Doc. 23-1 at 3 (informal grievance for "07H – Inadequate Treatment (Medical)"); see also Doc. 23-2 at 8. In that informal grievance (#251-2009-0196), Fullard stated:

> On July 21, 2020[,] I declared a medical emergency and was escorted to medical. I am a [h]eart patient with 6 heart attacks, a quadruple bypass and stage 2 COPD. I was sick complaining of Covid symptoms for two weeks. I was beratted [sic] by the nurse and was not believed to be sick from Covid, because I did not have a temp, and was sent back to the dorm. Four days later on July 25, 2020[,] I declared another medical emergency because again I could not breathe umong [sic] all my other symptoms, was escorted by the same nurse and a officer[, and] was placed in the medical emergency room. It was confirmed before I left for the hospital that I was Covid positive. I spent 9 days in ICU and 29 days in isolation. Relief: Retrain nurses and inmate compensation[.]

Id.; see also Doc. 1-10 at 2. On September 29, 2020, Columbia CI returned the informal grievance, stating in pertinent part:

> Please be advised you are outside the timeframe to grieve an issue that happened on 7/21/2020[.] [T]herefore your grievance is returned. Please note you have 20 days to file an informal [grievance] from the time the event being grieved occurred and you must sign your grievance next to Inmate (Signature).

Doc. 1-10 at 2. Fullard's remaining four informal grievances, filed in October 2020 and December 2020, are not part of the record, and therefore, the Court

assumes they are not relevant to Fullard's claims in this lawsuit.[9] <u>See</u> Doc. 23-1 at 3.

With regard to formal grievances, the search results from FDOC's Inmate Grievance database show Fullard filed only one formal grievance between July 21, 2020, and June 10, 2022. <u>See</u> Doc. 23-1 at 4; <u>see also</u> Doc. 1-10 at 3. Specifically, on October 6, 2020, Fullard submitted a formal grievance (#2010-251-012) in which he stated:

> On July 21, 2020[,] I declared a [m]edical emergency and was escorted to the medical building. I am a [h]eart patient with 6 heart attacks and stage 2 C.O.P.D. and hypertention [sic]. I was sick for two weeks and was not getting any better, complaining of covid symptoms. I was beraded [sic] by the Nurse and treated poorly. I was seeking help, only to be treated aggressively by the Nurse and the Capt. Because I did not have a fevor [sic] I was sent back to the dorm, even though I could not breathe due to the Covid. [B]ut before doing so, [Defendant] Capt. Camacho called my mother and informed her that I did not have covid and that my blood pressure needed to be adjusted. [F]our days later I could not handle it anymore and declared another medical emergency. Sgt Reckneir and the same Nurse showed up and were trying to calm me down to be transported to the medical building. I was visibly shaking and could not breath [sic] to the point of panicing [sic]. I was taken to medical and IV's

---

[9] The Court notes that three of the four grievances were received on the same date, December 11, 2020, and concerned medication issues or medical passes. <u>See</u> Doc. 23-1 at 3 (two informal grievances dated 2020-12-11 for "07G – Medication Issues (Medical)" and one informal grievance dated 2020-12-11 for "07E – Medical Passes (Medical)"). The fourth informal grievance, received October 20, 2020, appears to have alleged inadequate medical treatment, but Fullard does not contend that informal grievance is pertinent to this lawsuit. <u>See</u> <u>id.</u> (informal grievance dated 2020-10-20 for "07H – Inadequate Treatment (Medical)").

> started and E.K.G. performed and Dr. Perez came in
> and I told him I could not breathe[.] [H]e sent me to
> the hospital. Before I left it was confirmed that I was
> covid positive which they already knew the first time I
> declared a medical emergency. I spent 9 days in ICU
> and four day[s] in the infirmary on oxygen when I
> returned and 29 days in isolation in over 100 degrees
> heat at the main unit confinement building. I was still
> very sick with breathing issues, and forced to live in
> this horrible condition. I asked for grievances, sick
> calls, and request only to be denyed [sic] by the staff
> because they do not know the difference between
> inmates in isolation and or confinement. They
> constantly deny inmates anything in confinement.
> Relief[:] retrain nurses and staff and compensate
> inmate.

Doc. 1-10 at 3. On October 16, 2020, Columbia CI denied the formal grievance,

stating in pertinent part:

> Your request for administrative remedy or appeal has
> been reviewed and evaluated.
>
> This issue was addressed in informal grievance
> number 251-2009-0196. You are outside the timeframe
> to grieve an incident that happened on 7/21/202[0].
> Formal grievances must be received no later than 15
> calendar days from the date in which the incident or
> action being grieved occurred.
>
> Based on the foregoing, your request for
> administrative remedy or appeal is denied. You may
> obtain further administrative review of your
> complaint by obtaining form DC1-303, request for
> administrative remedy or appeal, completing the form,
> providing attachments as required by paragraphs 33-
> 103.007 (3)(a), F.A.C. , and forwarding your complaint
> to the Bureau of Inmate Grievance Appeals, 501 S.
> Calhoun Street, Tallahassee, Florida 32399-2500.

Id. at 4.

The search results from FDOC's Inmate Grievance database next show that Fullard submitted two grievance appeals after the denial of his formal grievance. See Doc. 23-2 at 2. In the first grievance appeal (#20-6-38137), submitted November 5, 2020, Fullard stated:

> On July 21, 2020[,] I declared a medical emergency. I was taken to medical by [Defendant] Capt. Camacho who was very aggressive towards me. Threatining [sic] to lock me up if I wasn't sick, and saying that he would declare emergency traffic and spray me. Because of this, the treating nurse was treating me aggressive as well. I was sick with most all of the Covid 19 symptoms. I was tested prior to this date. I am also a Heart and Lung patient with 6 [h]eart [a]ttacks the last one just one month before catching the covid and pneumonia, plus having C.O.P.D. and emphysema and [H]ypertension put me at a greater risk of serious complacations [sic]. I was denied treatment because I did not have a fever and lung weezing [sic] allthough [sic] I had all the other symptoms. [Defendant] Capt. Camacho called my mother and told her that "I did not have Covid," but high blood pressure at the time. Four days later I filed another medical emergency. Sgt Recknier and the same nurse showed up to transport me to the medical building to be treated. I was visibly shaking and could not breathe. I was made ready for transport by the nurses and Dr. Perez sent me to the [h]ospital. It was confirmed that I did have covid before I left. I spent 9 days in ICU and underwent treatment for covid and pneumonia. I was sent to the main unit infermary [sic] on oxygen for a week. Then I was sent to confinement for covid isolation in 100 plus degrees heat because the staff doesn't know the difference between covid isolation and confinement[.] I could not get any grievances. I put notes on the window but was refused. I spent 29 days in

19

> confinement and 15 days more than the 14 days
> required. The warden took a picture of the note and
> my face sheet and I was finally let out. Relief: Retrain
> nurses on covid symptoms and compensate inmate.

Doc. 1-10 at 6. On November 9, 2020, the appeal was returned without action

with the following response:

> Your administrative appeal to this office is in non-
> compliance with Chapter 33-103, Inmate Grievance
> Procedure, because your grievance at the institutional
> level was determined to be in non-compliance with the
> requirements of the rule.
>
> Your request for administrative appeal is in non-
> compliance with Chapter 33-103, Inmate Grievance
> Procedure, which states, "each grievance must address
> only one issue or complaint." Your current request for
> administrative appeal addresses more than one issue
> and/or complaint.
>
> If you feel you need medical attention, contact the
> institutional medical department via the sick
> call/emergency process.
>
> Based on the foregoing information, your appeal is
> returned without action.

See id. at 5. Receipt of this response prompted Fullard to file a second grievance

appeal (#20-6-40135) on November 24, 2020. See Doc. 23-2 at 2. In that

grievance appeal, Fullard stated:

> Your administrative response does not point to what
> issue or complaint you were referring to. So I will try
> to point to only the main issue or complaint.
>
> On July 21, 2020[,] I declared a medical emergency
> due to Covid 19 symptoms for two weeks. I was taken

20

> to medical by [Defendant] Cpt. Camacho who was berading [sic] me about the issue and when the nurse talked to me he continued in front of the nurse, causing her to do the same. I was checked by the nurse and because I did not have a certian [sic] symptom (fever) I was sent back with <u>no treatment</u>. Four days later I declared another medical emergency where I was examined by the same nurse and was also covid positive before I left for the hospital. I stayed 9 days in ICU and did 4 days in the infirmary on oxygen and 29 days at the main unit for covid isolation containment. I am a [h]eart and lung patient. Medical staff denied care knowing I was positive. Relief: Compensate inmate for denial of medical care.

Doc. 1-10 at 7. On December 30, 2020, Fullard's second grievance appeal was also returned without action with the following response provided:

> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule. It should have been documented as a returned without action (not as a denial).
>
> Therefore, your appeal is being returned without action.

<u>Id.</u> at 9.

In response to the above evidence, Fullard argues that he was unable to timely file an informal grievance within the twenty-day requirement "due to his hospitalization, infirmary stay and his isolation/confinement stay." Camacho Response at 7. Fullard alternatively contends that administrative remedies were initially unavailable to him because he did not have access to

21

grievance forms in the hospital or Columbia CI's isolation unit where he was housed. Id. at 7, 11, 14; see also Nurses' Response at 31-32. Fullard further notes that inmate movement and access to various areas, including the law library, was restricted at Columbia CI due to the COVID-19 pandemic. See Camacho Response at 11, 14. Fullard asserts that upon his release from isolation on September 3, 2020, he regained access to grievance forms and timely submitted informal grievance #251-2009-0196 within twenty days, on September 23, 2020. Id. at 14. As such, Fullard argues Columbia CI administrators incorrectly determined that informal grievance #251-2009-0196 was untimely. Id.

### 4. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motions and Responses and accept as true Fullard's allegations. See <u>Whatley</u>, 802 F.3d at 1209. If Fullard's allegations show a failure to exhaust, then dismissal would be appropriate. Id.

Here, Fullard alleges that he timely submitted informal grievance #251-2009-0196 regarding his July 21, 2020 medical emergency. On its face, this informal grievance is untimely as two months elapsed between July 21, 2020, and September 23, 2020, the date Fullard submitted the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(a) (requiring informal grievances to be received within twenty days from the date on which the grieved incident or

22

action occurred). Fullard, however, alleges in his Responses that Columbia CI's grievance process was unavailable to him because he did not have access to grievance forms until September 3, 2020, the date he states he was released from isolation to open population. Fullard alleges his informal grievance was timely submitted within twenty days of his release from isolation, and that he subsequently fully exhausted his administrative remedies by following the informal grievance with a formal grievance and two grievance appeals. Fullard's allegations, taken as true, preclude dismissal of this action at the first step of the <u>Turner</u> analysis. <u>See</u> <u>Jackson v. Griffin</u>, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at <u>Turner</u>'s first step). Thus, the Court will proceed to <u>Turner</u>'s second step and make specific findings to resolve the disputed factual issues related to exhaustion.

### 5. <u>Turner</u> Step Two

In resolving the disputed factual issues, the Court finds the record evidence and Fullard's allegations in the Complaint belie his assertion that FDOC's grievance process was unavailable to him until September 3, 2020. Specifically, Fullard alleged in his Complaint that he filed an informal grievance while in isolation. <u>See</u> Complaint at 21 ("Fullard is still not released [from isolation] and writes a grievance on the matter. Fullard is told that his release from confinement/isolation is being reviewed."). The search results

from FDOC's Inmate Grievance database confirm that Columbia CI grievance officials logged and processed an informal grievance, dated September 1, 2020, which was during the period Fullard alleges he was in isolation. See Doc. 23-1 at 2. Because Fullard was actively availing himself of the grievance process while in isolation, the Court finds that Fullard was not deterred or thwarted from pursuing his administrative remedies. Neither Fullard's allegations nor the record support his contention that he lacked access to grievance forms. Accordingly, Fullard's informal grievance (#251-2009-0196) was untimely as it was filed outside the twenty-day requirement. See Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005) ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA.").

To the extent Fullard argues that any untimeliness should have been excused due to his hospitalization, infirmary stay, time spent in isolation, or the restrictions in place due to the COVID-19 pandemic, the Court observes that Florida's grievance protocol grants inmates additional time to file a grievance upon a showing of good cause. See Fla. Admin. Code R. 33-103.011(2). Nothing in the record suggests that Fullard made any effort to seek an extension of time to file an informal grievance regarding Defendants' handling of his July 21, 2020 COVID-19 medical emergency. Nor does Fullard allege that he was unaware of (or unable to learn about) his ability to request an extension of time. See Fla. Admin. Code R. 33-103.015(10) ("A copy of these

24

rules shall be available for access by inmates at a minimum in the inmate library and from the housing officer of any confinement unit."). The Court therefore concludes that Fullard's untimely informal grievance (#251-2009-0196) was insufficient to exhaust his administrative remedies. See Johnson, 418 F.3d at 1159 ("[W]e hold that the PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of [the jail or prison's] administrative grievance procedures before filing a federal claim. Johnson's grievance, which he filed out-of-time and without good cause, is not sufficient to exhaust his administrative remedies for purposes of the PLRA exhaustion requirement."). Therefore, Defendants have carried their burden to show that Fullard failed to exhaust his administrative remedies prior to filing this lawsuit, and the Motions are due to be granted on that basis.

In the alternative, even if the Court were to assume that Fullard's informal grievance (#251-2009-0196) was timely, Fullard did not properly complete the FDOC's sequential three-step grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson, 418 F.3d at 1158); see Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step sequential process for inmate grievances that includes an informal grievance, formal grievance, and appeal).

25

As Defendant Camacho points out, Fullard's grievance appeal (#20-6-38127) was returned without action because his grievance at the institutional level did not comply with procedural requirements—namely, timeliness—and because the appeal, itself, did not comply with FDOC's inmate grievance procedures as it "addresse[d] more than one issue and/or complaint." Doc. 1-10 at 5; see Fla. Admin. Code § 33-103.007(4)(f) ("Each grievance or appeal shall address only one issue or complaint."). Fullard's initial informal grievance was limited to Defendants' conduct on July 21, 2020. Fullard's grievance appeal, however, raised factual allegations and issues beyond July 21, 2020, including his complaints concerning the amount of time he spent in isolation and the conditions of isolation. Consequently, because Fullard did not submit a grievance appeal in accordance with FDOC's procedural requirements, the Motions are due to be granted on that basis as well.

Based on the foregoing reasons, Fullard did not properly exhaust the administrative remedies available to him. As such, the Motions are due to be granted and Fullard's claims are dismissed for failure to exhaust.

### B. Defendants' Remaining Arguments

Because Fullard's claims against Defendants are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address Defendants' remaining arguments in their respective Motions. Therefore, as to these issues, the Motions are due to be denied without

prejudice.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1.     Defendants A. Robinson and M. Rossinsheld's Motion to Dismiss Complaint (Doc. 22) and Defendant Jesus Camacho's Motion to Dismiss Complaint (Doc. 23) are **GRANTED** to the extent Defendants seek dismissal for Fullard's failure to exhaust administrative remedies. In all other respects, the Motions are denied without prejudice.

2.     Plaintiff Wesley T. Fullard's Complaint (Doc. 1) is **DISMISSED without prejudice**.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of September, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-10
c:     Wesley Fullard, #J48933
       Counsel of record